IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CASSANDRA A. MURRAY, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-15-0532 |
| MIDLAND FUNDING, LLC, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

This case was removed to this Court on February 24, 2015, by Defendant under the auspices of the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d) and § 1453 (2015). (Notice of Removal, ECF No. 1.) Pending before the Court is Plaintiff's motion for remand to state court. (ECF No. 39.) The motion has been briefed (ECF Nos. 45, 46, 47, and 50), and no hearing is necessary, Local Rule 105.6 (D. Md. 2014). The motion will be granted in part and denied in part.

*I. Procedural History*

Plaintiff Cassandra A. Murray filed her Class Action Complaint & Request for Jury Trial in the Circuit Court for Anne Arundel County, Maryland, on April 25, 2014. (Compl., ECF No. 2; Docket, 02-C-14-187207, Circuit Court for Anne Arundel County, Maryland, http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis.) According to the complaint, Murray is a resident of Maryland, and Defendant Midland Funding, LLC, is a Delaware limited liability company. (Compl. ¶¶ 7 & 8.) She asked that the Plaintiff Class be defined as follows:

> Those persons sued by MIDLAND in Maryland state courts from October 30, 2007 through January 14, 2010 for whom MIDLAND obtained a judgment for an alleged debt, interest or costs, including attorney's fees in its favor in an attempt to collect a consumer debt.

(*Id.* ¶ 36.)  In addition, the complaint alleged:

> The Plaintiff Class members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based on the fact that MIDLAND has employed multiple entities and persons to collect on its behalf in thousands of collection action actions [*sic*] in [Anne Arundel County Circuit Court] and other state courts throughout the State of Maryland against the Plaintiffs [*sic*] Class.

(*Id.* ¶ 38.)

The complaint alleged that "Midland engaged in collection activities in more than 1,000 occurrences in the State of Maryland during the class period by taking actions, in the form of collection lawsuits, to collect debts from Plaintiff Class members." (*Id.* ¶ 22.)  Further, it was alleged that Midland did not have the collection agency license mandated by Maryland law during the time period of October 1, 2007, to January 14, 2010, when it finally obtained one. (*Id.* ¶¶ 20-21.)  Thus, the judgments obtained by Midland before it received its license are alleged to be void. (*Id.* ¶ 2.)  The complaint sought declaratory and injunctive relief for the putative class members and a money judgment for the Plaintiff Class in excess of $75,000 based upon alleged violations of Maryland common law and statutory law.

Midland filed a motion to dismiss or, in the alternative, motion to transfer venue, which was denied. (Docket, 02-C-14-187207.)  Midland filed a second motion to dismiss, and before that motion was ruled upon, Murray filed an amended complaint on February 18, 2015. (*Id.*)  The definition of the putative class remained the same as in the original complaint. (Am. Compl. ¶ 42, ECF No. 4.)  However, the allegations in the individual counts were retooled, the original complaint's request for declaratory judgment and injunctive relief relating to Midland's collection of the principal amount of the contested state court judgments was modified, and a

new count was added for the common law cause of action "money had and received"; in this new count, the relief claimed on behalf of the Plaintiff Class is a money judgment of $10,000,000 (*id.* ¶ 108).

## II. Standard for Remand

Because federal courts are courts of limited jurisdiction, a cause of action is presumed to lie outside of that limited jurisdiction, and the burden of establishing otherwise rests upon the party asserting jurisdiction. *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (*en banc*), *abrogated on other grounds by* 28 U.S.C. § 1446(b)(2)(B). In particular, removal statutes are to be strictly construed, and doubts regarding the propriety of removal should be resolved in favor of remanding the case to state court. *Id.*

## III. Analysis

Murray has advanced two bases for remanding this case to state court. First, she claims removal was untimely, and second, she argues this Court lacks subject-matter jurisdiction because of the *Rooker-Feldman* doctrine. Alternatively, Murray requests that, if the Court determines removal was timely and *Rooker-Feldman* requires remand of *only* Counts I and II, the Court then remand Counts I and II to the state court but stay, pursuant to *Burford* abstention, proceedings on Counts III, IV, and V pending state court resolution of Counts I and II. Each of these contentions will be addressed in turn.

### A. Removability

Murray contends the original complaint clearly showed that diversity jurisdiction existed under 28 U.S.C. § 1332(a) and also asserts that Midland failed to remove the case within thirty days of being served with it. Hence, Midland's removal upon receipt of the amended complaint is untimely. Murray's argument has no merit.

The original complaint was pled as a class action, alleged Murray was a resident of Maryland, lacked factual allegations as to *all other* putative plaintiffs' citizenship, and only claimed an amount in controversy of "in excess of $75,000" for the entire Plaintiff Class.[1] Jurisdiction under § 1332(a) requires complete diversity between all plaintiffs and all defendants. *See Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) ("With the exception of certain class actions, Section 1332, [Title 28, United States Code,] requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant," (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). In the instant case, one cannot simply presume that all putative plaintiffs have diverse citizenship from Midland. Given the time period in which judgments were allegedly obtained unlawfully—October 30, 2007 to January 14, 2010—it is more than possible that members of the putative class no longer live in Maryland and could have moved to Midland's state or states of citizenship, as citizenship is defined under traditional diversity standards. Those standards clearly do not apply to this case.

Instead, Class Action Fairness Act ("CAFA") standards apply, and under CAFA, federal diversity jurisdiction did not exist as to the original complaint. Pursuant to CAFA's provisions that are pertinent to this case, Murray's complaint only comes within the jurisdiction granted by CAFA if the amount in controversy exceeds the sum or value of $5,000,000, if it is a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant," and the total number of members of the aggregated plaintiff classes is at least 100. 28 U.S.C. § 1332(d)(2)(A), (5)(B). Murray's original complaint adequately alleges numerosity to permit a conclusion that the total plaintiff class members easily exceed 100 in number.

---

[1] Residency may often, but not necessarily, indicate citizenship. However, Murray conceded in her motion to remand that she is a citizen of Maryland. (Mot. Remand Supp. Mem. 3 n.2, ECF No. 39-1.)

Further, "minimal diversity" is sufficient under CAFA. 28 U.S.C. § 1332(d)(2)(A), *cited in Johnson v. Advance America*, 549 F.3d 932, 935 (4th Cir. 2008). In its notice of removal, Midland averred it is a Delaware limited liability company with its principal place of business in California. (Notice of Removal ¶ E.14.) Accordingly, under CAFA, Midland is a citizen of Delaware and California. 28 U.S.C. § 1332(d)(10); *Ferrell v. Express Check Advance of SC, LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010). Thus, minimal diversity existed between Murray and Midland. Although both number of class members and minimal diversity were met in the original complaint, the amount in controversy plainly fell short. It was not until the amended complaint was filed with a new count requesting $10,000,000 in damages for the Plaintiff Class—February 18, 2015—that Midland had a basis for removal to federal court. Thus, its removal on February 24, 2015, was well within the thirty-day time period required by statute. *See* 28 U.S.C. §§ 1446(b), 1453(b). Murray's first ground for remand is without merit.

### B. *Rooker-Feldman*

The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). As restated by the Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), "The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers *complaining of injuries caused by state-court judgments* rendered before the district court proceedings commenced *and inviting district court review and rejection of those judgments*." *Id.* at 284 (emphasis added). Thus, in the *Rooker* case, the Court ruled the plaintiff's request that the federal district court declare null and void state-court judgments against him was not within the subject-matter jurisdiction of the district court. "To do so would be an exercise of appellate jurisdiction. The

5

jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 416. Only the Supreme Court may entertain a proceeding to reverse or modify a state-court judgment. *Id.* Similarly, in *Feldman*, the Court concluded the federal district court had no jurisdiction to consider the plaintiff's request to review the merits of the adjudication by the District of Columbia Court of Appeals on plaintiff's application for admission to the D.C. bar. 460 U.S. at 486-87.

However, the *Rooker-Feldman* doctrine is narrowly construed. For example, in *Feldman*, the Court determined that the district court did have jurisdiction over the other allegations in the complaint relating to a general attack on the particular rule relied upon by the D.C. Court of Appeals in denying Feldman admission to the bar. *Id.* at 487. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293 (citation omitted). Thus, the *Rooker-Feldman* bar "applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). *See also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015) ("a federal court is not stripped of its jurisdiction simply because the claim challenges conduct that was previously examined in a state court action").

In Count I, the complaint[2] requests a declaration that the judgments obtained by Midland in collection actions during the time it did not possess a collection agency license are void. (Am. Compl. Count I, prayer for relief, ¶ b.) Such a request is clearly outside the jurisdiction of this

---

[2] Hereinafter, textual references to the "complaint" are references to the amended complaint, unless noted otherwise.

Court and must be remanded. However, Count I also requests that the Court "[o]rder appropriate injunctive relief against MIDLAND to prevent further violations of law or providing benefits to MIDLAND from its illegal activities, including a preliminary and permanent injunction." (*Id.* ¶ c.) Additionally, Count II asks the Court to declare that Midland "is not permitted to collect pre- and post-judgment interest and costs upon any void judgments . . . " and to provide "appropriate preliminary and final injunctive relief against MIDLAND to prevent further violations of law to collect pre- and post-judgment interest and costs upon any void judgments . . . ." (*Id.* Count II, prayer for relief, ¶¶ b, c.) As was noted in *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369 (D. Md. 2010), the Court cannot discern any jurisdictional basis, state or federal, for these additional forms of relief. Conceivably, they might be granted as necessary in aid of jurisdiction as to the requested declaration of void judgments sought in Count I, which is being remanded. Therefore, because the balance of Count I and all of Count II appear predicated upon the requested declaration of void judgments, they should also be remanded. It will be left to the Maryland state court to determine if the additional declaratory and injunctive relief requested is permitted by Maryland law.

The complaint's remaining counts, however, do not invite this Court's review and rejection of the allegedly void judgments obtained by Midland. Instead, they assert causes of action under the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.* (LexisNexis 2013), the Maryland Consumer Protection Act ("MCPA"), *id.* § 13-101 *et seq.*, and the Maryland common law. None of these causes of action requires a declaration that the judgments at issue are void. Instead, they allege violations of Maryland law by Midland in seeking and enforcing the judgments. Thus, the injury claimed in Counts III, IV, and V was not caused by the judgments themselves but by Midland's allegedly illegal actions.

As a result, they are "separable from and collateral to the merits of the state-court judgment." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring). *See also Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005) (finding challenge to untruthful testimony in obtention of criminal conviction not challenge to conviction itself and, therefore, permissible under *Rooker-Feldman*). *See also Truong v. Bank of America, N.A.*, 717 F.3d 377, 383 (5th Cir. 2013) (finding plaintiff's claimed injuries based upon banks' actions in obtaining foreclosure judgments and not based upon judgments themselves); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011) (concluding plaintiffs' claims based upon defendants' actions in enforcing judgments not barred by *Rooker-Feldman*); *Kovacic v. Cuyahoga Cnty. Dep't of Children & Fam. Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (deciding complaint based on defendants' conduct leading up to adverse state court decision not barred by *Rooker-Feldman*); *MSK EyEs LTD v. Wells Fargo Bank*, 546 F.3d 533, 539 (8th Cir. 2008) ("The Rooker-Feldman doctrine does not bar Appellant's claims premised on Wells Fargo's activities in filing the [state court debt collection] action and in enforcing the resulting judgment."); *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 995 (9th Cir. 2002) (claim premised upon allegedly unlawful postjudgment enforcement procedure not barred by *Rooker-Feldman*); *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1170-71 (10th Cir. 1998) (challenge to postjudgment collection actions not barred by *Rooker-Feldman*).[3]

It is permissible to remand, pursuant to the *Rooker-Feldman* doctrine, only the portion of a case that does not fall within the district court's original jurisdiction and to retain the balance as a federal case. *See Feldman*, 460 U.S. at 486-87 (affirming dismissal of barred claim, vacating

---

[3] Plaintiff requested the Court consider a decision by Judge Grimm of this Court, entered after the briefing on Plaintiff's remand motion had closed. The Court has reviewed that opinion, *Thana v. Bd. of License Comm'rs, Charles Cnty, Md.*, Civ. No. PWG-14-3481, 2015 WL 2341593 (D. Md. May 14, 2015), but concludes it to be factually inapposite to the instant case. Consequently, it does not change the Court's conclusions as to the application of *Rooker-Feldman* doctrine to Plaintiff's complaint.

dismissal of claim not barred), *cited in Exxon Mobil*, 544 U.S. at 286 (noting *Feldman*'s separation of impermissible claim from permissible claims); *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) ("Federal law does not permit a district judge to remand the complete litigation just because portions belong in state court. . . . If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest—unless the balance can be handled under the supplemental jurisdiction."). Accordingly, Counts I and II will be remanded. Counts III, IV, and V will remain in this Court.

### C. Burford Abstention

Murray's last argument is that, if the Court finds removal is timely and *Rooker-Feldman* remand of the entire case is unwarranted, the Court should stay proceedings on Counts III, IV, and V pending the outcome of Counts I and II in state court. She claims this would be a proper case for application of *Burford* abstention, invoking the Supreme Court's ruling in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Murray is mistaken. A stay of the remaining counts is inappropriate.

*Burford* involved a federal lawsuit contesting the reasonableness of an order issued by the Texas Railroad Commission granting a permit for drilling several oil wells. 319 U.S. at 317. The State of Texas had given the Railroad Commission the exclusive regulatory authority for the issuance of oil drilling permits. Beyond that, Texas had placed the judicial authority to review the Railroad Commission's permit orders in a specific set of state courts having judges who had acquired specialized experience in that field of law. *Id.* at 326-27. Abstention in the *Burford* case, *i.e.*, dismissal of the federal suit, "was appropriate because the availability of an alternative,

federal forum threatened to frustrate the purpose of the complex administrative system that Texas had established." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 725 (1996).

*Burford* abstention has been notably limited to two particular circumstances:

> (1) [W]hen there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted), *quoted in Town of Nags Head v. Toloczko*, 728 F.3d 391, 396 (4th Cir. 2013).

Neither circumstance is present in this case. Murray weakly argues that whether to declare Midland's judgments void is an "important policy issue[ ] . . . better suited to be addressed by the state court." (Mot. Remand Supp. Mem. 18.) First, the decision whether to grant declaratory relief is a judicial issue, not a "policy issue." Second, that decision no longer seems to present an unsettled question of law given a recent appellate decision. In *Finch v. LVNV Funding LLC*, 71 A.3d 193 (Md. Ct. Spec. App.), *cert. denied*, 77 A.3d 1084 (Md. 2013), the Court of Special Appeals broadly held, "[A] judgment entered in favor of an unlicensed debt collector constitutes a void judgment as a matter of law." *Id.* at 202. As a result of this decision, no "difficult question of state law" exists, if it ever did on this point.[4] Finally, it is largely thought that *Burford* abstention applies only in the context of state administrative processes. *See, e.g.*, *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 732 (4th Cir. 1999) (Luttig, J., concurring); *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 609 (D. Md. 2014)

---

[4] Were it not for the *Rooker-Feldman* doctrine, this Court could easily apply the *Finch* decision to the facts alleged in this case and, after receiving corroborating evidence thereon, determine the propriety of granting Plaintiff's request for a declaration that the Midland judgments, obtained within the specified time period, were void. Nevertheless, the mechanics of incorporating such a declaration into Maryland's court records for the members of the Plaintiff Class is a task that is definitely better suited to Maryland's state courts.

(*Burford* abstention inapplicable; its advocates "fail[ed] to identify how federal review would disrupt Maryland's efforts to establish a coherent policy concerning a matter of substantial public concern"). This case does not involve any state administrative process or orders that could be jeopardized by proceeding to adjudication on the remaining counts. Even so, to the extent that the doctrine could ever be applied outside of that context, this case presents no reason to do so.

### *IV. Conclusion*

Removal was timely, but the *Rooker-Feldman* doctrine requires remand of Counts I and II to state court. This case will proceed as to Counts III, IV, and V. A separate order follows.

DATED this __23rd__ day of June, 2015.

                                        BY THE COURT:


                                        _____/s/_____
                                        James K. Bredar
                                        United States District Judge